IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GWENDOLYN PORTER, *Administratrix* | : | CIVIL ACTION |
| *of the Estate of Jamere Porter, Deceased* | : | |
| | : | |
| v. | : | |
| | : | |
| CROZER CHESTER | : | |
| MEDICAL CENTER, INC., et al. | : | NO. 16-2252 |

MEMORANDUM

Dalzell, J.                                                                                   August 1, 2016

## I.      **Introduction**

We consider here two motions to dismiss the complaint. Plaintiff Gwendolyn Porter, Administratrix of the Estate of Jamere Porter, has sued the County of Delaware, Pennsylvania ("Delaware County"), the Communication Education Center, Inc. ("CEC"), James E. Hyman, Frank Green, Steve C. Tomlin, and Melissa Weglarz (collectively, the "CEC officials"), Ronald B. Phillips, Margaret Griffith, Chuck Stork, Dorothy Murry, Susan Kendra, Catherine Halstead, Lynn Milano, and Sarah Sperber (collectively, the "CEC medical personnel"), and unknown correctional officers/employees of CEC and Delaware County  in relation to the death of her son, Jamere Porter, on May 11, 2014.[1] We have jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367. For the reasons explained below, we will dismiss without prejudice Counts III, IV, VII and XI of the complaint.

---

[1] Plaintiff also sued Crozer-Chester Medical Center, Inc., Mohammed E. Budeir, Timothy J. Harrison, Marcin A. Jankowski, and other unknown physicians (the "Crozer defendants"). After those defendants moved to dismiss part of the complaint, plaintiff stipulated to a dismissal of her claims against them for violations of the Pennsylvania Constitution and for attorneys' fees. See Stipulation (July 12, 2016). These defendants have since answered the complaint. We will therefore dismiss as moot the Crozer defendants' motion to dismiss.

**II.**     **<u>Standard of Review</u>**

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. <u>See</u> Fed. R. Civ. P. 12(b)(6); <u>see also</u>, <u>e.g.</u>, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). To survive such a motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678.

We need not accept as true the complaint's legal conclusions, and threadbare recitals of the elements of a cause of action will not suffice. <u>Id.</u> Nor are we bound to accept as true legal conclusions couched as factual allegations. <u>Twombly</u>, 550 U.S. at 555. Our Court of Appeals has laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. <u>Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint. For clarity, we will refer to plaintiff Gwendolyn Porter as "Plaintiff" and her son, Jamere Porter, as "Porter."

**III.   Factual Background**

On April 24, 2014, Porter was shot seven times while driving in Chester, Pennsylvania. Compl. ¶ 26. He was transported to Crozer-Chester Medical Center and treated for his severe, life-threatening injuries. Id. at ¶¶ 26-27.  While hospitalized, Porter was placed in police custody, charged with criminal conduct, and arraigned bedside. Id. at ¶ 28. He also had many surgeries and was given anticoagulants to help prevent his blood clots. Id. at ¶¶ 29-31. On May 6, Porter's doctors decided he could be discharged to the George W. Hill Correctional Facility (the "Correctional Facility"). Id. at ¶¶ 7, 32. CEC operates the Correctional Facility pursuant to a contract with Delaware County. Id. at ¶¶ 7-8. Porter was discharged from the hospital with pain medication but without anticoagulant medication. Id. at ¶ 33.

Porter arrived at the Correctional Facility around 5:00 p.m. on May 7. Id. at ¶ 34. Porter had difficulty breathing when he arrived and over the next four days. Id. at ¶ 45. Griffith, a nurse practitioner and one of CEC's employees, evaluated Porter when he arrived and knew of Porter's medical history and risks from his injuries, but she did not mention or observe that he was having difficulty breathing. Id. at ¶¶ 14, 34. Porter was then seen at 6:28 p.m. by Kendra, a nurse and CEC employee, and again at 9:15 p.m. by Halstead, another nurse and CEC employee. Id. at ¶¶ 15-16, 35. Kendra and Halstead both concluded his condition was normal and neither mentioned Porter's breathing difficulties. Id. at ¶ 35. On May 8 at 11:30 a.m., Phillips, a doctor and CEC employee, evaluated Porter by examining his wounds, removing sutures, and ordering wound care. Id. at ¶¶ 13, 36. Phillips did not perform a physical examination or take Porter's vital signs, and he did not observe Porter's difficulty breathing. Id. at ¶ 36. Porter was seen for wound care

by unknown medical providers at 6:01 p.m. on May 8 and 6:17 p.m. on May 9. Id. at ¶ 37. These unknown medical providers did not take Porter's vital signs or conduct a physical examination, and there was no mention of Porter's breathing difficulties. Id. at ¶ 37. Murry, a nurse and CEC employee, evaluated Porter's mental health status on May 8 at 4:40 p.m. and later on May 9 at 6:18 p.m., but she did not note Porter's breathing difficulties. Id. at ¶¶ 19, 38-39. Stork, a nurse and CEC employee, conducted a mental health assessment of Porter on May 10 at 4:56 p.m. and again on May 11, but he did not conduct a physical examination or note Porter's difficulty breathing either day. Id. at ¶¶ 18, 40-41.

On May 11 at 10:30 p.m., Milano, a nurse and CEC employee, responded to a call from an unknown correctional officer and went to Porter's cell because of his difficulty breathing. Id. at ¶ 42. Milano started emergency resuscitation and called for paramedics. Id. Sperber, a nurse practitioner and CEC employee, went to Porter's cell at 10:32 p.m. to help Milano try to resuscitate Porter. Id. at ¶¶ 20, 43. When emergency medical services personnel arrived, they removed Porter from his cell and took him to Riddle Hospital, where Porter was pronounced dead. Id. at ¶ 44.

Porter had difficulty breathing starting from his arrival at the Correctional Facility until his eventual collapse, but CEC medical personnel did not evaluate or report his ongoing difficulty breathing. Id. at ¶ 46. The unknown correctional officers at the facility also ignored Porter's breathing difficulties. Id. at ¶ 45. During Porter's time at the Correctional Facility, the CEC officials,[2] as well as CEC itself and Delaware County, were responsible for creating policies and procedures for accepting individuals transferred from a hospital to the Correctional Facility's medical unit. Id. at ¶¶ 9-12, 46. Delaware County, CEC, and the CEC officials were

---

[2] Hyman is the Chief Executive Officer of CEC, Green is the Warden of the Correctional Facility, Tomlin is the Senior Vice-President of Re-Entry Operations for CEC, and Weglarz is the Director of In-Prison Treatment for CEC. Compl. ¶¶ 9-12.

also responsible for training, educating, supervising, and disciplining correctional officers and medical personnel at the Correctional Facility with respect to recognizing and treating life-threatening conditions. Id. at ¶ 47.

Porter died on May 11, 2014 as a result of pulmonary embolisms -- sudden blockages of major blood vessels in the lungs, usually caused by blood clots -- that caused his breathing difficulties and eventual collapse. Id. at ¶ 117. The complaint alleges that the CEC medical personnel were deliberately indifferent to Porter's medical needs because they failed to: recognize that the Correctional Facility was incapable of providing the level of medical care Porter required upon his May 7, 2014 transfer; refuse to accept Porter as an inmate because of his medical needs and condition; conduct a full and complete medical evaluation of Porter, including a review of his hospital records at the time of his transfer; recognize Porter's increased risk of blood clots; prescribe and dispense anticoagulation medications; provide multiple daily observations and evaluations of Porter; observe Porter's difficulty breathing and appropriately treat his condition; provide security personnel with information about Porter's condition and need for continuous observation; examine Porter for signs of clot formation; and, timely and appropriately provide Porter with emergency medical treatment. Id. at ¶ 80.

## IV.   <u>Discussion</u>

Delaware County, CEC, the CEC officials, Griffith, Murry, Kendra, and Milano moved to dismiss Counts III, IV, VI, VII, and XI, all claims for conduct occurring before May 10, 2014, as well as plaintiff's claim for punitive damages. They also moved for a more definite statement. Phillips filed his own motion to dismiss Counts VII and VIII against him as time-barred, or, in the alternative, only Count VII as failing to state a claim. We consider the parties' arguments.

A.      **Phillips, Griffith, Murry, Kendra, and**
         **Milano's  Motions to Dismiss Counts VII and VIII**

In Count VII, plaintiff brings a Fourteenth Amendment claim against the CEC medical

personnel for denying Porter medical attention with deliberate indifference. Compl. ¶¶ 77-81. In

Count VIII, plaintiff brings a negligence claim against them for the same conduct.  Id. at ¶¶ 83-

87. Phillips moves to dismiss both of plaintiff's claims against him, arguing that those claims (1)

are barred by the applicable two-year statute of limitations and, (2) fail to set forth a sufficient

factual basis to demonstrate deliberate indifference to a serious medical need. Phillips Mot. to

Dismiss ("MTD") at ¶¶ 13-14. Griffith, Murry, Kendra, and Milano move to dismiss Counts VII

and VIII on similar grounds. CEC MTD Mem. at 15. Plaintiff opposes both motions.


1.        **Whether Plaintiff's Claims In Counts VII And VIII Are Time-Barred**

Our Court of Appeals permits limitations defenses to be raised by motion under Fed. R.

Civ. P. 12(b)(6), but only if it is facially apparent that the claim has been brought outside the

statute of limitations. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Hanna v.

United States Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). If the bar is not

facially apparent, then it may not afford the basis for a dismissal under Rule 12(b)(6). Id. (citing

Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

The length of a limitations period for a Section 1983 cause of action is governed by the

personal injury tort law of the state where the cause of action arose. Wallace v. Kato, 549 U.S.

384, 387 (2007); Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Pennsylvania has a two-year

statute of limitations for many torts, including negligence claims for personal injury or wrongful

death. 42 Pa. Cons. Stat. Ann. § 5524. The statute of limitations for a Section 1983 claim arising

in Pennsylvania is therefore two years. Kach, 589 F.3d at 634; Kost v. Kozakiewicz, 1 F.3d 176,

190 (3d Cir. 1993) (explaining that all Section 1983 actions are considered as personal injury claims to determine the limitations period under the applicable state law).

But federal law governs the accrual of Section 1983 claims, and therefore the limitations period begins to run from the time when the plaintiff knew, or had reason to know, of the injury that constitutes the basis of the Section 1983 claim. Genty v. Resolution Tr. Corp., 937 F.2d 899, 919 (3d Cir. 1991). Determining when a claim accrues is an objective inquiry, as we must ask whether a reasonable person would have known of the injury, not what the plaintiff actually knew. Kach, 589 F.3d at 634; Barren by Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988). "[A] cause of action accrues at the time of the last event necessary to complete the tort, usually [when] the plaintiff suffers an injury." Kach, 589 F.3d at 634 (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)).

Phillips claims that because his only alleged encounter with Porter took place on May 8, 2014, and the complaint was filed on May 10, 2016, plaintiff's claims against him are barred by the two-year statute of limitations. Phillips MTD Mem. at unnumbered p. 4. Griffith, Murry, Kendra, and Milano contend that plaintiff's claims for any conduct that took place before May 10, 2014 are time-barred and should be dismissed because plaintiff's complaint was filed on May 10, 2016. CEC MTD Mem. at 4-6.

A cause of action accrues at the time of the last event necessary to complete the tort -- here, Porter's death on May 11, 2014. From the face of the complaint, it appears that the complaint was timely filed within the two-year statute of limitations. As no bar is facially apparent, the statute of limitations cannot afford the basis of dismissal under Rule 12(b)(6). We will therefore deny these defendants' motions to dismiss Counts VII and VIII as time-barred.

2.      <u>Whether Count VII States A Claim For Deliberate Indifference</u>

Phillips, Griffith, Murry, Kendra, and Milano also claim that the complaint fails to allege sufficient facts to demonstrate any deliberate indifference to a serious medical need.

Negligence in the administration of medical treatment to prisoners is not itself actionable under the U.S. Constitution, but failure to provide adequate treatment is a violation of the Eighth Amendment when it results from deliberate indifference to a prisoner's serious illness or injury. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). If the plaintiff is a pretrial detainee rather than a convicted prisoner, then we analyze any claim for deliberate indifference under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. <u>Inmates of Allegheny Cty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979).

A medical need is serious if it is either diagnosed by a physician as requiring treatment or so obvious that a lay person would easily recognize the need for medical attention. <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). The seriousness of a medical need may also be determined by reference to the effect of denying the particular treatment. <u>Id.</u>

A prisoner can demonstrate deliberate indifference by showing that a doctor intentionally inflicted pain; prison authorities denied reasonable requests for medical treatment, thereby exposing the inmate to undue suffering or the threat of tangible, residual injury; or prison authorities knew of the inmate's need for medical care but refused to provide it. <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004). A prisoner may also demonstrate deliberate indifference by showing that such actor intentionally interfered with the prescribed treatment; delayed necessary medical treatment for non-medical reasons; erected arbitrary and burdensome procedures resulting in interminable delays and outright denials of medical care to suffering inmates;

conditioned the provision of needed medical services on the inmate's ability or willingness to pay; prevented an inmate from receiving recommended treatment for a serious medical need or denied access to a physician capable of evaluating the need for such treatment; or decided to provide easier and less efficacious treatment of the inmate's condition with deliberate indifference to that inmate's serious medical needs. White v. Napoleon, 897 F.2d 103, 109-10 (3d Cir. 1990) (citing Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970)); Lanzaro, 834 F.2d at 346-47.

If an inmate's medical care is inadequate or inappropriate because of an error in medical judgment, then that medical malpractice is non-actionable, but if such inadequacy results from deliberate indifference or motivation by non-medical factors, then it is actionable. Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993).

According to the complaint, Phillips, Griffith, and Kendra each saw Porter once, Murry and Stork saw him twice, and Milano and Sperber saw him upon his collapse in his cell. The complaint further alleges that the CEC medical personnel knew of Porter's medical condition and his risk for blood clot formation and that during his entire time at the Correctional Facility, Porter was suffering from breathing difficulties. Id. at ¶¶ 78-79. Essentially, the complaint alleges that these defendants were deliberately indifferent to Porter's medical needs because they failed to reject Porter from being transferred to the Correctional Facility and then failed to diagnose, treat, or monitor him for the risk of blood clots. Id. at ¶ 80.

Accepting the complaint's factual averments as true, plaintiff states a facially plausible claim that Porter had a serious medical condition, but not that the CEC medical personnel were deliberately indifferent to it. A layman would have recognized that Porter's difficulty breathing required medical attention in light of his recent serious injuries and hospitalization.  Plaintiff's

allegations that the CEC medical personnel did not act, even though they knew about Porter's recent injuries and difficulty breathing as well as the risks and complications regarding possible blood clots, suffice to state a claim for negligence, but do not alone plausibly plead deliberate indifference on the part of the CEC medical personnel.

We will therefore dismiss without prejudice Count VII of the complaint as to moving defendants Phillips, Griffith, Murry, Kendra, and Milano. We will also <u>sua</u> <u>sponte</u> dismiss without prejudice plaintiff's Fourteenth Amendment claims against the non-moving CEC medical personnel Stork, Halstead, and Sperber in Count VII, and against the unknown correctional officers/employees of CEC and Delaware County in Count X because the complaint's deficiencies are fatal to plaintiff's claims against those defendants as well. <u>See, e.g.</u>, <u>Bryson v. Brand Insulations, Inc.</u>, 621 F.2d 556, 559 (3d Cir. 1980) (holding that the court may <u>sua</u> <u>sponte</u> grant judgment on the pleadings provided that the complaint affords a sufficient basis for the Court's action). But we will deny the moving defendants' motion to dismiss plaintiff's claims as time-barred.

### C.    <u>Motion To Dismiss Counts III, IV And XI</u>

Delaware County, CEC, and the CEC officials move to dismiss Counts III, IV, and XI because they aver the complaint fails to state adequate claims under <u>Monell</u> or for supervisory liability thereunder. CEC MTD Mem. at 7.[3]

A municipal entity is not liable for its employees' constitutional torts under a theory of <u>respondeat</u> <u>superior</u> -- that is, a municipality cannot be held liable for its employees' torts solely

---

[3] Count III is a Fourteenth Amendment claim for deliberate indifference and denial of medical attention against Delaware County. Compl. ¶¶ 55-57. Count IV is the same Fourteenth Amendment claim against CEC and the CEC officials. <u>Id.</u> at ¶¶ 59-63. Count XI is a <u>Monell</u> claim against Delaware County and CEC. <u>Id.</u> at ¶¶ 100-04.

by virtue of their employment relationship. <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). A municipality is liable for its employees' Section 1983 violations only where the execution of official policy or custom inflicts the injury. <u>Id.</u> at 694. To be liable under Section 1983, the municipal entity must act with deliberate indifference to the claimed constitutional deprivation. <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 250 (3d Cir. 2007). There must also be a direct causal link between the policy or custom and the alleged constitutional deprivation. <u>Id.</u> at 249 (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989)).

Just as a municipality cannot be subjected to liability under Section 1983 under a theory of <u>respondeat superior</u>, so too must such complaints against private corporations contracting with the state to provide services plead that there was a relevant policy or custom that caused the alleged constitutional violation. <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 583 (3d Cir. 2003) (citing <u>Monell</u>, 436 U.S. at 691). An employee's actions may be considered the result of a policy or custom when (1) the act complained of is the implementation of a policy promulgated by the appropriate state actor, (2) no rule has been announced as policy, but federal law has been violated by an act of the policymaker itself, or (3) a policymaker has failed to act affirmatively at all, though the need to take some action is so obvious, and the inadequacy of existing practice so likely to result in the violation of a constitutional right, that the policymaker can reasonably be said to have been deliberately indifferent. <u>Id.</u> at 584 (citing <u>City of Canton</u>, 489 U.S. at 390).

As we have dismissed plaintiff's Fourteenth Amendment claims against the CEC medical personnel, we find that the municipal defendants employing them cannot be held liable for any alleged constitutional deprivation. <u>See</u> <u>Grazier ex rel. White v. City of Phila.</u>, 328 F.3d 120, 124 (3d Cir. 2003) (explaining that the city itself could not be held liable on a failure to train theory for conduct a jury determined did not violate the plaintiff's constitutional rights); <u>City of Los</u>

Angeles v. Heller, 475 U.S. 796, 799 (1986) (explaining that the municipality could not be held liable when the officer inflicted no constitutionally-forbidden injury).We will therefore dismiss without prejudice Counts III, IV, and XI of the complaint.

### D.    Motion To Dismiss Count VI

The CEC officials move to dismiss the negligence claim against them in Count VI. Compl. ¶¶ 70-74; CEC MTD Mem. at 14-15. A claim for employer negligence under a theory of respondeat superior relies upon the employer's responsibility for its employee's negligence when that negligence occurs within the scope of employment. Williams v. Rene, 72 F.3d 1096, 1099 (3d Cir. 1995). This vicarious liability is predicated on the employee's primary liability. Id. The complaint pleads that during Porter's time at the Correctional Facility the CEC officials were responsible for creating policies and procedures for accepting individuals transferred from hospitals to the Correctional Facility's medical unit. Id. at ¶¶ 9-12, 46. It also states the CEC officials were responsible for training, educating, supervising, and disciplining correctional officers and medical personnel at the Correctional Facility with respect to recognizing and treating life-threatening conditions. Id. at ¶ 47. At the pleadings stage, this allegation suffices to plead a plausible claim to relief, and we will therefore deny the motion to dismiss Count VI.

### E.    More Definite Statement

Delaware County, CEC, the CEC officials, Griffith, Murry, Kendra, and Milano move for a more definite statement under Fed. R. Civ. P. 12(e), alleging that the complaint is confusing and redundant. CEC MTD Mem. at 18. Regardless of the complaint's alleged deficiencies, it is not so vague or ambiguous that the defendants cannot reasonably respond. We will therefore deny defendants' motion for a more definite statement.

### F.   Punitive Damages

Delaware County, CEC, the CEC officials, Griffith, Murry, Kendra, and Milano move to strike plaintiff's claim for punitive damages. Punitive damages may be awarded in a civil rights case where the conduct is motivated by evil motive or intent or involves reckless or callous indifference to the federally-protected rights of others. Smith v. Wade, 461 U.S. 30, 56 (1983); Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000). We have dismissed without prejudice plaintiff's civil rights claims, but plaintiff's complaint includes state law claims for negligence. State law governs the legal standard for punitive damages for those claims. Griffiths v. CIGNA Corp., 857 F. Supp. 399, 409-10 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3d Cir. 1995).

In Pennsylvania, the Restatement (Second) of Torts § 908 governs the imposition of punitive damages, which are meant to punish and deter the tortfeasor and similar actors. Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989); Restatement (Second) of Torts § 908(1). Punitive damages may be awarded for outrageous, malicious, wanton, reckless, willful, or oppressive conduct, as well as evil motive or reckless indifference to the rights of others. Rizzo, 555 A.2d at 69; Restatement (Second) of Torts § 908(2). Relevant considerations include the act itself, the surrounding circumstances, the wrongdoer's state of mind or motive, and the parties' relationship. At this early stage, it would be premature to dismiss plaintiff's claim for punitive damages, and we will therefore deny defendants' motion to strike.

### V.   Conclusion

We will dismiss without prejudice Counts VII and X because the complaint fails to state a plausible claim to relief under the Fourteenth Amendment, and we will dismiss without prejudice Counts III, IV, and XI because without an underlying constitutional violation, there can

be no <u>Monell</u> claim. But we will deny the motion to dismiss Count VI and the claim for punitive

damages, as well as the motion for a more definite statement. An appropriate Order follows.


BY THE COURT:


<u>    /s/ Stewart Dalzell, J.</u>
Stewart Dalzell, J.