IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GWENDOLYN PORTER, *Administratrix* :
*of the Estate of Jamere Porter, deceased*
        Plaintiff, :

      v.                                     CIVIL ACTION
                                  :         NO. 16-2252

CROZER CHESTER MEDICAL
CENTER, INC.; MOHAMMED H. BUDEIR; :
TIMOTHY J. HARRISON; MARCIN A.
JANKOWSKI; UNKNOWN PHYSICIANS OF
CROZER CHESTER MEDICAL CENTER, INC.; :
COUNTY OF DELAWARE, PENNSYLVANIA;
COMMUNICATION EDUCATION
CENTER, INC.; JAMES E. HYMAN; FRANK :
GREEN; STEVE C. TOMLIN; MELISSA
WEGLARZ; RONALD B. PHILLIPS;
MARGARET GRIFFITH; DOROTHY MURRY; :
SUSAN KENDRA; CATHERINE HALSTEAD;
LYNN MILANO; SARAH SPERBER; and
UNKNOWN CORRECTIONAL OFFICERS - :
EMPLOYEES OF COMMUNITY
EDUCATIONAL CENTER, INC. AND
DELAWARE COUNTY, PA
        Defendants.

**MEMORANDUM**

**Jones, II     J.**                                                                                    June 1, 2017

**I.     Introduction**

      Plaintiff Gwendolyn Porter—Decedent Jamere Porter's mother and the administratrix of his estate—has sued:

- the County of Delaware, Pennsylvania ("Delaware County");

- the Communication Education Center, Inc. ("CEC");

- James E. Hyman ("Hyman"), Frank Green ("Green"), Steve C. Tomlin ("Tomlin),

- and Melissa Weglarz ("Weglarz") (collectively, the "CEC officials");

- Ronald B. Phillips ("Phillips"), Margaret Griffith ("Griffith"), Chuck Stork ("Stork"), Dorothy Murry ("Murry"), Susan Kendra ("Kendra"), Catherine Halstead ("Halstead"), Lynn Milano ("Milano"), and Sarah Sperber ("Sperber") (collectively, the "CEC medical personnel"); and

- unknown correctional officers and employees of CEC and Delaware County;

in relation to the death of her son, Jamere Porter ("Porter"), on May 11, 2014.[1] Plaintiff brings claims under 42 U.S.C. § 1983 alleging denial of medical care in violation of the Fourteenth Amendment, as well as state law claims of negligence and carelessness.

Presently before the Court are three separate motions to dismiss.

1) Defendants Delaware County, CEC, the CEC officials, Griffith, Murry, Kendra, and Milano moved to dismiss:

   - Counts IV and VI against Hyman, Green, Tomlin, and Weglarz for failure to state a claim;

   - Count VII against Griffith, Murry, Kendra, and Milano for failure to state a claim;

   - Count III against Delaware County for failure to state a claim; and

   - Count XI against Delaware County and CEC for failure to state a claim.

(Dkt No. 32, Defs. Delaware County, CEC Inc., Hyman, Tomlin, Weglarz, Griffith, Murry, Kendra, Milano, and Green Mot. to Dismiss [hereinafter Delaware County MTD] at 5).

2) Defendant Phillips moved to dismiss:

   - Count VII against Phillips as being barred by the applicable two-year statute of limitations or, in the alternative, for failure to state a claim; and

---

[1] Plaintiff has also sued Crozer-Chester Medical Center, Inc., Mohammed E. Budeir, Timothy J. Harrison, Marcin A. Jankowski, and other unknown physicians (the "Crozer defendants"). These defendants have answered the complaint.

- Count VIII against Phillips as being barred by the applicable two-year statute of limitations.

(Dkt No. 33, Def. Phillips Mot. to Dismiss [hereinafter Phillips MTD] at 6).

3) Defendants Halstead and Sperber moved to dismiss:

   o Count VII against Sperber and Halstead for failure to state a claim; and

   o Count VIII against Sperber for failure to state a claim.

(Dkt No. 40, Defs. Halstead and Sperber's Mot. to Dismiss [hereinafter H & S MTD] at 5.)

Plaintiff concedes that the claims in Counts VII and VIII against Sperber should be dismissed. Plaintiff contests the other motions to dismiss. Viewing the Complaint in the light most favorable to the Plaintiff, the Court holds that (1) the Delaware County MTD (Dkt. No. 32) is GRANTED IN PART; (2) the Phillips MTD (Dkt. No. 33) is GRANTED IN PART; and (3) the H & S MTD (Dkt No. 40) is GRANTED.

## II. Factual and Procedural Background[2]

On April 24, 2014, Porter was shot seven times while driving in Chester, Pennsylvania. Compl. ¶ 27. He was transported to Crozer-Chester Medical Center and treated for his severe, life-threatening injuries. *Id.* at ¶¶ 27-28. While hospitalized, Porter was placed in police custody, charged with criminal conduct, and arraigned bedside. *Id.* at ¶ 29. He also had many surgeries and was given anticoagulants to help prevent his blood clots. *Id.* at ¶¶ 30-32. On May 6, Porter's doctors decided he could be discharged to the George W. Hill Correctional Facility (the "Correctional Facility"). *Id.* at ¶¶ 7, 33. CEC operates the Correctional Facility pursuant to a contract with Delaware County. *Id.* at ¶¶ 7-8. Porter was discharged from the hospital with pain medication but without anticoagulant medication. *Id.* at ¶ 34.

Porter arrived at the Correctional Facility around 5:00 p.m. on May 7, 2014. *Id.* at ¶ 35.

---
[2] The facts are taken from the Amended Complaint (Dkt. No. 30).

Porter had difficulty breathing when he arrived and over the next four days. *Id.* at ¶ 50. Griffith, a nurse practitioner and one of CEC's employees, evaluated Porter when he arrived and knew of Porter's medical history and risks from his injuries, but she did not mention or observe that he was having difficulty breathing. *Id.* at ¶¶ 15, 35. Porter was then seen at 6:28 p.m. by Kendra, a nurse and CEC employee, and again at 9:15 p.m. by Halstead, another nurse and CEC employee. *Id.* at ¶¶ 16-17, 36. Kendra and Halstead both concluded his condition was normal and neither mentioned Porter's breathing difficulties. *Id.* at ¶ 35. On May 8 at 11:30 a.m., Phillips, a doctor and CEC employee, evaluated Porter by examining his wounds, removing sutures, and ordering wound care. *Id.* at ¶¶ 13, 37. Phillips did not perform a physical examination or take Porter's vital signs, and he did not observe Porter's difficulty breathing. *Id.* at ¶ 37. Porter's family visited him in jail that same day and noticed that he was complaining of having trouble breathing and observed his breathing difficulties. *Id.* at ¶ 39. Porter was seen for wound care by unknown medical providers at 6:01 p.m. on May 8 and 6:17 p.m. on May 9. *Id.* at ¶ 38. These unknown medical providers did not take Porter's vital signs or conduct a physical examination, and there was no mention of Porter's breathing difficulties. *Id.* Murray, a nurse and CEC employee, evaluated Porter's mental health status on May 8 at 4:40 p.m. and later on May 9 at 6:18 p.m., but she did not note Porter's breathing difficulties. *Id.* at ¶¶ 20, 40-41. Stork, a nurse and CEC employee, conducted a mental health assessment of Porter on May 10 at 4:56 p.m. but did not conduct a physical examination or note Porter's difficulty breathing either day. *Id.* at ¶¶ 19, 43. That same day, Porter complained to an unknown correctional officer or medical provider that he was having pain in his mid-back area. *Id.* at ¶ 44. The individual told him it was "likely just a bullet trying to work its way out." *Id.* Porter was not provided with a physical examination after that conversation. *Id.*

On May 11, Stock conducted another mental health assessment. *Id.* at ¶ 46. At 10:30 p.m., Milano, a nurse and CEC employee, responded to a call from an unknown correctional officer and went to Porter's cell because of his difficulty breathing. *Id.* at ¶ 47. Milano started emergency resuscitation and called for paramedics. *Id.* Sperber, a nurse practitioner and CEC employee, went to Porter's cell at 10:32 p.m. to help Milano try to resuscitate Porter. *Id.* at ¶¶ 21, 48. When emergency medical services personnel arrived, they removed Porter from his cell and took him to Riddle Hospital, where Porter was pronounced dead. *Id.* at ¶ 49.

Porter had difficulty breathing starting from his arrival at the Correctional Facility until his eventual collapse, but CEC medical personnel did not evaluate or report his ongoing difficulty breathing. *Id.* at ¶ 51. The unknown correctional officers at the facility also ignored Porter's breathing difficulties. *Id.* During Porter's time at the Correctional Facility, the CEC officials,[3] CEC, and Delaware County were responsible for creating policies and procedures for accepting individuals transferred from a hospital to the Correctional Facility's medical unit. *Id.* at ¶¶ 9-12, 57. Delaware County, CEC, and the CEC officials were also responsible for training, educating, supervising, and disciplining correctional officers and medical personnel at the Correctional Facility with respect to recognizing and treating life-threatening conditions. *Id.* at ¶ 47. Phillips was responsible for creating policies and procedures regarding the medical care and treatment of inmates. *Id.* at ¶¶ 14, 53-55.

Porter died on May 11, 2014 as a result of pulmonary embolisms--sudden blockages of major blood vessels in the lungs, usually caused by blood clots--that caused his breathing difficulties and eventual collapse. *Id.* at ¶ 139. The Amended Complaint alleges that the CEC

---

[3] Hyman is the Chief Executive Officer of CEC, Green is the Warden of the Correctional Facility, Tomlin is the Senior Vice-President of Re-Entry Operations for CEC, and Weglarz is the Director of In-Prison Treatment for CEC. Am. Compl. ¶¶ 9-12.

medical personnel were deliberately indifferent to Porter's medical needs because they failed to:

- Recognize that the Correctional Facility was incapable of providing the level of medical care Porter required upon his May 7, 2014 transfer;
- Refuse to accept Porter as an inmate because of his medical needs and condition;
- Conduct a full and complete medical evaluation of Porter, including a review of his hospital records at the time of his transfer;
- Recognize Porter's increased risk of blood clots;
- Prescribe and dispense anticoagulation medications;
- Provide multiple daily observations and evaluations of Porter;
- Observe Porter's difficulty breathing and appropriately treat his condition;
- Provide security personnel with information about Porter's condition and need for continuous observation;
- Examine Porter for signs of clot formation; and,
- Timely and appropriately provide Porter with emergency medical treatment.

*Id.* at ¶ 98.

Plaintiff filed her original Complaint on May 10, 2016. On June 9, 2016, Defendants Delaware County, CEC, the CEC officials, Griffith, Murry, Kendra, and Milano moved to dismiss parts of the Complaint for failure to state a claim. Defendant Phillips also moved to dismiss the claims against him as time-barred, or in the alternative, one of the claims for failing to state a claim.

Judge Stewart Dalzell, to whom this case was originally assigned, granted these motions to dismiss in part and gave Plaintiff leave to file an Amended Complaint.[4] On August 22, 2016,

---

[4] Judge Dalzell dismissed all Plaintiff's § 1983 claims without prejudice. Dkt. No. 28, ¶ 4.

Plaintiff filed an Amended Complaint (Dkt. No. 30). On September 2, 2016, Defendants Delaware County, CEC, the CEC officials, Griffith, Murry, Kendra, and Milano renewed their motion to dismiss Plaintiff's § 1983 claims for failure to state a claim (Delaware County MTD). Defendant Phillips also renewed his motion to dismiss (Phillips MTD). On October 20, 2016, Defendants Halstead and Sperber filed their motion to dismiss (H & S MTD).[5]

Plaintiff filed her response to the Delaware County MTD on September 29, 2016 (Dkt. No. 37) [hereinafter "Delaware County Response"], to the Phillips MTD on September 30, 2016 (Dkt. No. 38) [hereinafter "Phillips Response"], and to the H&S MTD on November 22, 2016 (Dkt. No. 47) [hereinafter "H&S Response"]. On January 4, 2017, this case was assigned to this Court (Jones, II, J.) for all further proceedings.

## III. Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the compliant, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must

---

[5] Sperber was served on September 30, 2016; Halstead was served on October 1, 2016. Dkt. No. 39.

contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

The Third Circuit in *Santiago v. Warminster Township* set forth a three-part analysis that a district court must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV. Discussion

### A. Whether Counts VII and VIII are Time-Barred

Defendant Phillips moved to dismiss Counts VII and VIII against him, arguing that they are barred by the applicable two-year statute of limitations. In Phillips's motion to dismiss Plaintiff's original Complaint, he argued that because his only alleged encounter with Porter took place on May 8, 2014, and the complaint was filed on May 10, 2016, plaintiff's claims against him were barred by the two-year statute of limitations. Dkt. No. 10. Judge Dalzell denied Phillips' motion to dismiss these counts as time-barred, finding that the cause of action did not accrue until the time of the last event necessary to complete the tort--Porter's death on May 11, 2014. Dkt. No. 27 at 7. After Plaintiff filed her Amended Complaint, Phillips renewed his

motion to dismiss the claims against him as time-barred.

The Third Circuit permits limitations defenses to be raised by motion under Fed. R. Civ. P. 12(b)(6), but only if it is facially apparent that the claim has been brought outside the statute of limitations. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citing *Hanna v. United States Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). If the bar is not facially apparent, then it may not afford the basis for a dismissal under Rule 12(b)(6). *Id.* (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

The applicable statute of limitations for this action is two years. *See* 42 Pa. Cons. Stat. Ann. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993). The limitations period begins to run from the time when the plaintiff knew, or had reason to know, of the injury that constitutes the basis of the § 1983 claim. *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). Determining when a claim accrues is an objective inquiry, as a court must ask whether a reasonable person would have known of the injury, not what the plaintiff actually knew. *Kach*, 589 F.3d at 634; *Barren by Barren v. United States*, 839 F.2d 987, 990 (3d Cir. 1988). "[A] cause of action accrues at the time of the last event necessary to complete the tort, usually [when] the plaintiff suffers an injury." *Kach*, 589 F.3d at 634 (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

Phillips argues that because Plaintiff's Amended Complaint alleges that Porter "suffered needlessly" due to Phillips' actions on May 8, 2014, the statute of limitations began to run from that date, as that is the date where the injury occurred. He argues that this amendment to the complaint constitutes a "facially apparent" basis to dismiss the action. However, Phillips ignores the plain law, which is that a cause of action accrues at the time of the <u>last</u> event necessary to

complete the tort. The Court agrees with Judge Dalzell that the last event necessary to complete the tort was Porter's death on May 11, 2014. Because the original Complaint was filed on May 10, 2016, no bar is facially apparent.

### B. Whether Counts VII States a Claim for Deliberate Indifference

Defendants Griffith, Murry, Kendra, Milano, Halstead, and Phillips all move to dismiss Count VII for failure to state a claim for inadequate medical care in violation of the Fourteenth Amendment. Judge Dalzell dismissed this count against the CEC medical personnel in the original Complaint, finding that while Plaintiff had stated a facially plausible claim that Porter had a serious medical condition, Plaintiff had not sufficiently pled that these defendants were deliberately indifferent to Porter's medical condition.[6] While Plaintiff's Amended Complaint contains some additional assertions, she still has not asserted a plausible claim of deliberate indifference against these defendants.

#### 1. Legal Standard

In a civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff must show that the Defendant, acting under the color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). An individual state actor is liable under § 1983 only where he or she played an "affirmative part" in the alleged misconduct. *Mason v. City of Philadelphia*, 2014 WL 4722640, at *5 (E.D. Pa. 2014) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted).

Failure to provide adequate medical treatment to a pretrial detainee is a violation of the Due Process Clause of the Fourteenth Amendment when it results from deliberate indifference to

---

[6] While Stork, Halstead, and Sperber did not move to dismiss the original Complaint as they were not served until after Judge Dalzell ruled on the first motion to dismiss, Judge Dalzell dismissed them sua sponte. Dkt. No. 27 at 14.

a prisoner's serious illness or injury. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003) (citing *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983)). *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). For a denial of medical care to constitute a violation of the Fourteenth Amendment, the plaintiff must show (i) a serious medical need, and (ii) acts or omissions by law enforcement officers that indicate deliberate indifference to that need. *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016) (citing *Natale*, 318 F.3d at 582) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999)).

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)).

A prison official does not act with deliberate indifference unless the official "knows of and disregards an excessive risk to inmate health and safety". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A prisoner can demonstrate deliberate indifference by showing that a doctor intentionally inflicted pain; prison authorities denied reasonable requests for medical treatment, thereby exposing the inmate to undue suffering or the threat of tangible, residual injury; or prison authorities knew of the inmate's need for medical care but refused to provide it. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). There must be proof that the conduct alleged was deliberate and intentional. *Little v. Lycoming Cty.*, 912 F.Supp. 809, 815 (1996), *aff'd*, 101 F.3d 691 (3d Cir. 1996). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation."

*Spruill*, 372 F.3d at 235. "Mere disagreement as to the proper medical treatment is also insufficient." *Id.* (citing *Monmouth*, 832 F.2d at 346). If an inmate's medical care is inadequate or inappropriate because of an error in medical judgment, then that medical malpractice is non-actionable under the Fourteenth Amendment, but if such inadequacy results from deliberate indifference or motivation by non-medical factors, then it is actionable. *Durmer v. O'Carroll*, 991 F.2d 64, 68-69 (3d Cir. 1993).

### 2. Plaintiff Failed to Sufficiently Allege a Claim for Deliberate Indifference Against Griffith, Murry, Kendra, and Milano

Defendants Griffith, Murry, Kendra, and Milano argue that Plaintiff has failed to state a constitutional claim for inadequate medical care because the Amended Complaint fails to plead facts that Defendants were deliberately indifferent. In response, Plaintiff argues that "notice pleading" is sufficient to state a claim, relying on the Supreme Court's decisions in *Conley v. Gibson*, 355 U.S. 41 (1957) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In doing so, Plaintiff seems to be deliberately ignoring the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which "retired the *Conley* . . . test". *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009). The Court elaborated in *Iqbal* that a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

In deciding whether a Complaint has stated a claim which would entitle a plaintiff to relief, a district court must (1) identify the elements of the claim, (2) review the complaint to strike conclusory allegations, and then (3) look at the well-pleaded components of the complaint and evaluate whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff argues that she has pled affirmative acts of deliberate indifference in paragraphs

97-99 of the Amended Complaint. The Court notes, however, that these paragraphs are the same as paragraphs 79-81 of the original Complaint. Even considering Plaintiff's amendments, the Court does not find factual allegations which support a claim of deliberate indifference, only conclusory allegations which must be stricken from consideration.[7] *See Malleus*, 641 F.3d at 563 (in deciding whether a Complaint has stated a claim which would entitle a plaintiff to relief, a district court must strike conclusory allegations). While Plaintiff has sufficiently pled that Porter suffered from a serious medical need, she has not pled any facts which support a reasonable inference that Griffith, Murry, Kendra, or Milano knew of and disregarded Porter's breathing problems. It is not sufficient to plead that these defendants should have known that Porter was struggling to breathe. While Plaintiff may have stated a claim for medical malpractice, she has not stated a claim for deliberate indifference rising to a Constitutional violation.

### 3. Plaintiff Failed to Sufficiently Allege a Claim for Deliberate Indifference Against Halstead

Defendant Halstead also moves to dismiss Count VII because the Amended Complaint fails to claim that she was deliberately indifferent. Plaintiff argues that she has sufficiently alleged that Halstead knew or should have known of the excessive risk to Porter's health. Plaintiff points to specific places in the Amended Complaint where she alleges that Porter did not receive any treatment for his breathing problems. The Court accepts these allegations as true, and yet still does not find that Plaintiff has pled any facts which support a reasonable inference that Halstead actually knew of and disregarded Porter's breathing problems. In the Amended Complaint, Plaintiff alleges that Halstead observed Porter and concluded that his condition was normal, despite signs to the contrary. While this may be sufficient to allege a

---

[7] *See, e.g.*, Amended Complaint ¶ 95.

claim for negligence, it does not state a claim for deliberate indifference.

### 4. Plaintiff Failed to Sufficiently Allege a Claim for Deliberate Indifference Against Phillips

Defendant Phillips argues that Plaintiff has not pled facts demonstrating a culpable state of mind. Specifically, Phillips argues that there is no basis from the Amended Complaint to conclude that Phillips was aware of Porter's medical need, especially as the Complaint states that Phillips did not document any breathing difficulty. In response, Plaintiff argues that a plaintiff at the pleading stage is not required to proffer all available evidence, but only needs to plead allegations of fact to alert the Defendant to the nature of the claims against him. As explained above, notice pleading is not sufficient; rather, the Plaintiff must allege facts to support a reasonable inference that the defendant is liable for the misconduct alleged. Because Plaintiff's Amended Complaint still does not allege facts to support a reasonable inference that Phillips knew of and disregarded Porter's breathing problems, it fails to state a claim for deliberate indifference.

### C. Whether Count IV States a Claim for Deliberate Indifference

Defendants Hyman, Green, Tomlin, and Weglarz move to dismiss Count IV for failure to state a claim. The CEC officials contend that Plaintiff makes no allegations of any direct involvement of the defendants but instead brings a *Monell* claim against them for failing to institute policies and procedures as employees of CEC. Defendants argue that *Monell* only extends §1983 liability to municipalities and does not provide a cause of action against individual actors. They also claim that because Porter was being treated by a prison doctor, the CEC officials, who are not medical personnel, cannot be found deliberately indifferent as a matter of law. Plaintiff responds that she is bringing a supervisory liability claim under §1983.[8]

---

[8] Plaintiff plagiarizes five pages of its brief from the Third Circuit's opinion in *Barkes v. 1st Correctional Medical*,

Plaintiff asserts that the CEC officials created policies and procedures which resulted in the alleged constitutional violation.

Individual defendants who are policymakers may be liable under § 1983 if it is shown that, with deliberate indifference to the consequences, the defendants established and maintained a policy, practice, or custom which directly caused the constitutional harm. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Supervisory liability presumes that there is first a constitutional harm suffered by the plaintiff. Here, because the Court has dismissed plaintiff's Fourteenth Amendment claims against the CEC medical personnel, the Court also finds that the supervisors cannot be held liable as there is no constitutional violation.

Additionally, Plaintiff argues that she has pled the affirmative acts of deliberate indifference committed by the CEC officials specifically in paragraphs 57 and 58 of the Amended Complaint. However, there are no facts alleged in these two paragraphs that support a reasonable inference of deliberate indifference of the part of the CEC officials to any consequences that may have arisen from the policies they established.

### D. Whether Counts III and XI State a Claim under *Monell*

Defendants Delaware County and CEC move to dismiss the *Monell* claims in Count III and XI for failure to state a claim. Because there is no underlying constitutional violation, the Court finds that there is no municipal liability and shall dismiss these two counts.

---

766 F.3d 307 (3d Cir. 2014) to explain supervisory liability. Plaintiff then goes on to say that Defendants could be liable for a *Monell* claim. The Court will address Count IV as a supervisory liability claim under § 1983. To the extent that Plaintiff brought a *Monell* claim against the CEC Officials, such a claim must be dismissed because it is clearly established law that *Monell* claims can only be brought against municipalities, not individuals. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (*Monell* liability occurs when "the municipality *itself* causes the constitutional violation at issue.") (emphasis in original) (explaining *Monell*, 436 U.S. 658 (1978)).

### i. Legal Standard

Municipal liability arises under § 1983 only when a constitutional deprivation results from an official policy or custom. *Monell*, 436 U.S. at 691-94. To prevail on a claim under § 1983, a plaintiff must establish that he was deprived of a constitutional right. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). Under *Monell*, a plaintiff can show that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Beyond proving that an unlawful policy existed, a plaintiff must also demonstrate that "such a policy or custom was the proximate cause of the injuries suffered." *Patterson v. City of Phila.*, 2009 WL 1259968, at *10 (E.D. Pa. 2009) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "'A sufficiently close causal link between . . . a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom.'" *Bielevicz*, 915 F.2d at 851 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

### ii. Analysis

Because Plaintiff has failed to state a Fourteenth Amendment claim as to the CEC officials and CEC medical personnel, the municipal defendants employing them also cannot be held liable for a constitutional violation. *See Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) ("municipal liability will only lie where municipal action actually caused an injury") (citing *City of Canton*, 489 U.S. at 390); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (when there is no constitutional injury at the hands of the individual police

officer, there is no *Monell* liability).

### E. Whether Count VI States a Claim for Negligence

The CEC officials move to dismiss the negligence claim against them in Count VI for failure to state a claim. Defendants argue that they owed no duty to Porter because they did not personally participate in his medical care. Defendants also contend that because they are not medical personnel, they had no duty to render or supervise Porter's medical care when medical staff have been retained for that purpose. Additionally, Defendants assert that while a corporation can be liable for the acts of employees, executives and directors of a company cannot be personally liable absent exceptional circumstances.[9]

To state a claim for negligence, a plaintiff must "allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to the actual damages suffered by the plaintiff." *Garlick v. Trans. Tech. Logistics, Inc.*, 636 Fed.Appx. 108, 114 (3d Cir. 2015) (quoting *Scampone v. Highland Park Care Ctr., LLC*, 618 Pa. 363, 57 A.3d 582, 596 (2012)). Plaintiff argues that, under Pennsylvania law, hospital supervisors owe a duty to their patients to, among other things, oversee those practicing medicine and formulate and enforce adequate rules and policies to ensure quality care for its patients. However, the cases Plaintiff cites hold that hospitals, not their employees, owe a duty to their patients. *Scampone v. Grane Healthcare Co.*, 11 A.3d 967; *Thompson v. Nason Hospital*, 527 Pa. 330, 339 (1991) (a hospital has four general duties).

In deciding whether to impose a duty, courts must consider five factors: (1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing the duty; and (5) the overall public interest in imposing the duty. *Pyeritz v. Com.*, 613 Pa. 80, 89 (2011) (citing *R.W.*

---
[9] Defendants do not offer any case law to support this assertion.

*v. Manzek*, 585 Pa. 335, 347 (2005). Even when the parties are strangers to each other, there is a general duty imposed on all persons not to place others at risk of harm through their actions. *J.E.J. v. Tri-County Big Brothers/Big Sisters Inc.*, 692 A.2d 582 (Pa. Super. 1997) (citing *Hoffman v. Sun Pipe Line Co.*, 394 Pa.Super. 109, 115 (1990). The scope of this duty is limited to those risks which are reasonably foreseeable by the actor. *Id.*

Plaintiff has pled that Defendants failed to have specific policies and procedures such as:

- Evaluating an inmate's medication needs and providing medication;
- Monitoring inmates with known medical conditions producing breathing difficulties; and
- Observing inmates being transferred from a hospital with severe medical conditions.

It is reasonably foreseeable that failing to have these policies in place could result in serious harm to inmates with severe medical conditions. Therefore, Plaintiff has successfully pled the existence of a duty and breach of that duty, and has stated a claim for negligence.

**V. Conclusion**

In light of the foregoing, the Court will dismiss Count IV against Hyman, Green, Tomlin, and Weglarz, Counts III, VII, and XI, and all claims against Sarah Sperber. These claims are dismissed with prejudice, as Plaintiff was put on notice already as to the aforementioned deficiencies by Defendants' original Motions to Dismiss and Judge Dalzell's decision, yet failed to correct the errors with her Amended Complaint. An appropriate Order follows.